The case is on for argument today. Council should be confident that we have read the briefs and are familiar with the arguments in each of the cases so please do not consume your limited time with addressing the facts. Go right to the legal arguments that you would like to press upon us. In the event that you are new to our lighting system, when the yellow light goes on, you are beginning to consume your rebuttal time. When the red light goes on, your entire time is expired. Very well, with that said, we'll start with number 067045, Albert, against the DVA. Ms. Randolph. Good afternoon. Thank you. As a preliminary matter, I wonder if your Honor would permit me to hand up a copy of 38 CFR 4.71A with respect to the neon red diagnostic codes. If you would hand it to Ms. Thomas, she will hand it up to us. Thank you. Your Honor, I'm here today on behalf of Mr. Albert, who is a veteran of the United States Navy. When he was in the Navy, he suffered a knee injury and had the cartilage in his right knee removed. It caused him recurrent pain ever since it happened, and as the record shows at Joint Appendix page 85, even when he was first discharged from the hospital, after the maximum benefits of hospitalization had been achieved, he was complaining of mild residual sub-patellar discomfort. And that's basically the same thing that he was complaining of when he got out, and that's why he filed for compensation. The medical examiner's report, in connection with his compensation waiting, again, this is the Joint Appendix at 101 at SEC, also notes the same complaints. Right knee bottles of ed occasionally, on page 103, aching knee at times, and 104, the diagnosis, post-operative residuals from arthrotomy, removal of medial meniscus of right knee. So over that time period, two to three years, same complaints. Right knee aches at times, bothers at times, and that's the fact. That's undisputed. There's no issue as to that's what we're characterizing as his symptomatology. The regional office found that he was service-connected for the condition, but there was no compensation. It was a non-compensable rating because it was not symptomatic. The regional office committed a couple of errors of law, which were outcome-determinative, which is why we're here. They failed to use Diagnostic Code 5259, and that's on the sheet which I passed out, which is cartilage semi-minor removal of symptomatic, which everyone acknowledges. The BVA acknowledges. The Court of Appeals for Veterans Claims acknowledges. Everyone acknowledges that was the correct code. And while it is permissible under CFR 4.20 and 4.27 to use a generic code such as the regional office did, 5299, when there is no specific, relevant diagnostic code, it is not permissible to do so when there is a listed code. It's also not permissible to do it without complying with 4.27, 38 CFR 4.27, which says that you have to include with your 5299 code the number appropriate to the residual condition or to the most closely analogous condition that does exist in the code so that later people such as ourselves can know what it was you thought you were rating here. And the regional office did not do that. They violated the statute which requires them to identify as best they can in accordance with a list of diagnostic code, something that they don't think is in there. First of all, they thought it wasn't in there, but it is in there. And second of all, they didn't comply with what they had to do to use the generic code. And their decision is also internally inconsistent. They talk about at Joint Appendix 111, in I, they call it service connection for a torn meniscus right knee. And then later on, they acknowledge that it's actually post-operative residuals, the removal of the meniscus. So the regional office's decision is not entitled to any presumptions of validity. They've made legal errors, they've made factual errors, and they're internally inconsistent. Having said that, it is outcome determinative that they used the wrong code. The code is 5259, Hartlett Stem and Lunar Removal of Symptomatic. This symptomatic does not say, it doesn't define what symptoms are required. And the reason I've given everyone this page is because the universe of injuries to the knee and legs in the diagnostic code system is very finite. There's ankylosis, which is stiffness. There's subluxation and lateral instability, which are lateral instability, going sideways wrong. There's limitation of flexion. There's limitation of extension. And there's not a generic other impairments. The generic other impairments for knee, knee other impairment of, is actually specific. It's subluxation or lateral instability. So other impairments, there isn't any other symptom other than these listed symptoms that someone could have with respect to the removal of their cartilage. Everything else is covered here. If he had problems flexing or extending, it would be covered here. And he wouldn't need to have 5259, removal of cartilage, symptomatic. So to read that as requiring those same symptoms, which is what's been done in this case, is to render 5259 meaningless. It's completely meaningless. There's no point in having it in the code. And that, as we know, is impermissible. You cannot read a statute. But Ms. Randolph, wasn't really the issue as to the definition of symptomatic? Isn't that the entire case? It is. What symptomatic means? It is, Your Honor. And that's what I'm saying. It cannot mean any of these other things. But it's not defined in the regs or the statute, is it? No, it isn't. So the VA defined it. The VA impermissibly defined it to exclude the evidence of the medical record and the evidence that the medical examiner noted, which includes pain, recurrent pain. But is that inconsistent with the regulation? Is that inconsistent with the statute? Yes, it is, Your Honor, because in other circumstances, such as the arthritis situation and limitation of motion, for example, we've cited to 38 CFR 4.59. That's a very similar situation. Where there is painful pain, but not limitation of motion, and where there is joint pathology, that regulation requires a minimum compensation, a minimum 10% compensation. That's exactly what we have here, Your Honor. We have pain, but no other serious, objective, documentable problems. And we have joint pathology. The joint pathology is that that cartilage isn't there anymore. That's a pathological joint. It doesn't have the cartilage. It's just like with the arthritis things, Your Honor, in 38 CFR 5.03. They talk about if you can find X-ray evidence of the arthritis and pain, you don't have to have anything else. I thought what the VA was saying was that self-reported symptoms aren't sufficient. Isn't that essentially what they were saying? No, Your Honor, I don't think that is what they said. And we don't know exactly what they said, because they didn't give us, they didn't say, the regional office did not say, this isn't symptomatic, it's the removal of cartilage but it's not symptomatic. They may have been operating from what they called it in paragraph I, a torn meniscus right knee, and that would be analyzed under 52-58, which requires symptomology of locking, pain, and effusion. We don't know what they were doing. Well, suppose we read the record as they're saying that self-reported symptoms, as opposed to evidence from a medical examination, aren't sufficient. Would that be a misconstruction of the regulation? Yes, Your Honor, I think it would. How can you measure pain without limitation of motion, which the statute plainly provides for in 38 CFR 4.59, without self-reporting? There's no other way of measuring it, Your Honor. And here, the concern is that there's no pathology, and so you have a person who comes up and says, I'm in pain, and I don't know why. But here, we know why. We have the pathology. The cartilage has been removed. And in fact, what normally happens here, although that's not a matter of record, is that the patient develops the arthritis, which in fact Mr. Albert has developed. And that's what the experts who designed this diagnostic code are recognizing, that even if removing the cartilage fixes it, so you don't have locking, pain, and effusion, and you don't have problems flexing and extending, you still have an injury that, if it's causing you pain, if it's enough that you are reporting it to the doctors, it's compensable at the minimal level, just as arthritis pain is. Your Honor, and I'd like to point out that that is entirely consistent with the other provisions with respect to pain and injuries which do not limit motion in an objectively measurable way, such as 38 CFR 4.59. And to read the statute otherwise is to make that code section 52.59 completely meaningless, because there is no other injury to which that could apply other than stiffness, failure to extend, failure to flex, failure to be able to move widely. It has to apply to pain. Thank you, Your Honor. I see my time is up. We will reserve your time remaining for rebuttal. Thank you. Ms. Gilboy. May it please the Court. The March 23, 2005 decision for the Court of Appeals for Veterans Claims should be affirmed. As the Court noted, the only issue within the jurisdiction of this Court here is whether Diagnostic Code 38 CFR 4.715259, which provides for a 10% disability for removal of semilunar cartilage that is symptomatic, requires objective manifestations as well as subjective complaints of pain. The Veterans Court found that although the consideration of pain is important in evaluating a joint disability, it is not the only factor to be considered. Therefore, the Court implicitly found that symptomatic means more than subjective complaints of pain. But who else would know whether it's painful or not except the person who's suffering the pain? Well, symptomatic, though, means that it's pain that's related to a disease, according to Stedman's Medical Dictionary. So it's actually the medical examiner that would say whether or not the pain was related to a disease. Although, certainly, appellant could testify as to whether he subjectively experienced pain. He's a layperson, and so he cannot say that it's indicative of disease. But his cartilage is gone, right? That's correct. So that means that somehow or other, if he feels a pain from the removal of the cartilage, the absence of the cartilage, he's the one who knows whether it's painful. We know that the cartilage is gone. Isn't that a symptom? Well, no. No, because it's not necessarily indicative of a disease. It's indicative of the cartilage being removed. But as to whether that's a disease, that would be a medical judgment. Well, wait. Your response seems to me different from what I understood your argument to be. Assume that the pain is directly related to the removal of the cartilage, and assume that a doctor would so determine, that would be symptomatic related to a service-connected condition, would it not? Well, the doctor would have to determine whether it was symptomatic, whether it was related to a disease. Well, but to the removal of the cartilage. In other words, I have something happen to me. I have my cartilage removed, and as a result of that, I experience, and the doctor says, you're going to experience pain. You're going to have the consequences of the bones rubbing against one another, which is what the cartilage prevents. That's going to give you trouble for the rest of your life. That would be symptomatic, correct? If the doctor determined that that was related to... The removal of the cartilage, which was because the cartilage, something went wrong with the cartilage and had to be removed, right? Right, but he would have to make that determination that the pain was related to the removal of the cartilage and symptomatic. Okay, alright. I thought you were saying there had to be some other disease beside the removal of the cartilage that had to be connected with the pain. No, I'm sorry. I didn't mean to be unclear on that. Okay, I'm with you. Thank you. Was this issue about the construction of the regulation as excluding self-reported symptoms as sufficient, was that raised before the Court of Appeals for Veterans' Claims? Well, it was in the supplemental statement of the case that promulgated by the Department of Veterans Affairs. No, but that's not my question. My question is, was this issue that we've been talking about argued before the Court of Appeals for Veterans' Claims? I believe it was because they discussed it in their decision. Okay. Where did they discuss it in the decision? Well, they discussed the fact that even if the semilunar cartilage had been removed, he would not be entitled to compensation under Diagnostic Code 5259 because he was not symptomatic. And they note that he did mention that his knee ached and bothered him from time to time. No, but what I'm asking is, did they raise the issue about the construction of the regulation and say that the Board had misconstrued the regulation in this respect? Did the government raise it? No, did the veteran raise it? I believe that he did in his brief to the Court of Appeals for Veterans' Claims, he did mention that he had complained of subjective complaints of pain and thus he was symptomatic. Well, it's not quite the same thing as saying that the Board misconstrued the regulation. No, it's not. I think it would be an implicit argument that the Board misconstrued the regulation rather than a direct argument that the Board misconstrued the regulation. Okay. But we know that the Department of Veterans Affairs in the July 2002 supplemental statement of the case specifically discussed that although the semilunar cartilage had been removed, that it was not a symptomatic removal because there were only subjective complaints of pain and no objective evidence. So we know that the Department of Veterans Affairs has interpreted 38 CFR 4.71 Diagnostic Code 5259 symptomatic as requiring something more than subjective complaints of pain. And this is a situation where the Department of Veterans Affairs is interpreting a regulation that it promulgated. And so that interpretation is entitled to deference as long as it is reasonable. That's under our and Cleveland Indians. Let me ask you, we're talking about subjective, objective. Is this really just another way, maybe a little more polite way of saying that somebody came in, complained of pain, but the doctor did not either credit the complaints or find any association of the complaint with the kinds of testing that the doctor would do to see if the pain is associated with a particular joint problem, for example? Well, I don't know that we would say that the doctor misbelieved Appellant because he certainly did note his subjective complaints of pain in the report. And they're also noted in the regional office decision. But I think there was no finding that it was associated. Right. Okay. In other words, I have my tonsils removed and I come back a year later and I say I'm suffering sore throat and it's recurring and so forth. The doctor, one of two things, either the doctor could sort of probe around and say, well, you're not telling the truth, in which case that would be subjective expressions of pain, but it wouldn't be objectified and that the doctor would say, I don't confirm that. I gather that's sort of one type of case that would be non-qualifying. Another would be, well, yeah, you're suffering throat pain, but there's no indication that it has anything to do with your tonsils. Now, either one of those, I suppose, would be enough to say this is non-qualifying, even though you have a service-connected condition. Your tonsils were removed because of something that happened in the service. But you don't get any recovery based on your complaints of pain, right? Isn't that essentially your case here? Well, I don't think it's our case that anyone necessarily misbelieved Appellant, but I do think that it is. Well, I understand, but it's one of two different routes. What you're saying is, well, set the first route aside because there was a report which presumably indicates some crediting of pain, but the failure here is a failure to associate the reports of pain with the particular condition. Right. All right. Right. I'd just like to touch on the argument that 38 CFR 4.59 required just mere subjective complaints of pain to constitute symptoms. That deals with arthritis, which was not at issue in the time of the 1970 regional office decision. And in addition, it discusses that the facial expression of the claimant and pressure on manipulation should be noticed and related to the affected joints. So, in fact, that suggests that it's not just pain. It's pain that's visible upon manipulation and a medical examination. That's not simply subjective complaints of pain. And, again, arthritis wasn't at issue. In the briefs, appellant has also argued that it's not possible to give a no percent rating under diagnostic code 5259, but 38 CFR 4.31 says that in every situation where the evaluation schedule requires residuals and the required residuals are not shown, a zero percent evaluation is permissible. And here the specific residuals that were required were symptomatic residuals, and because the examiner found that they were not symptomatic, a zero percent rating is permissible. Well, what you're saying is basically that the regulations, even though they specify a certain percentage, that they also include a zero percentage, right, as a residual. Well, you can give a zero percentage if the required residuals, which in this case are symptomatic residuals, are not shown, correct? Even if the rating does show a certain percentage. That's correct, because it provides for a zero percent rating when the required residuals are not shown. As to the argument that it was incorrectly evaluated under diagnostic code 5299, in fact, I think what happened was the Court of Appeals for Renderance Claims and the Board found that it was appropriate to rate by analogy because the removal was not symptomatic. However, even if it should have been rated under 5299, there would have been a zero percent rating, and therefore the error was not outcome determinative, which is necessary to constitute clear and unmistakable error. For these reasons and the other reasons discussed in our brief, we respectfully request that the decision of the Court of Appeals for Veterans Claims be affirmed. Thank you, Ms. Tertullin. Ms. Randolph, you have about four and a half minutes if you choose to. Your Honor, I really just have one point to make, and that's to go back to this, what you all were discussing, that either they didn't believe there were symptoms or the symptoms were not relatable to the removal of the cartilage. And if we go back again to the medical exam that begins at 101 of the Joint Appendix, the doctor did believe there were things. He asked, in fact, for an X-ray at page 108 of the Joint Appendix. He asked for an X-ray of the right knee, so he believed that something needed to be investigated further there. What he found and what he clearly characterized as residues, he found something. To take your example, if I go in and have my tonsils out 20 years back, 20 years later I come in, or even a year later I come into the hospital, they're not going to talk about residuals of a tonsillectomy unless I complain about something. The question of whether they made the right decision on this record is a fact question. Wait, wait, wait. Did you raise the issue about the construction of the regulation with the Court of Appeals for Veterans claim? Your Honor, I was not Mr. Albert's attorney then. Oh, did Mr. Albert's counsel raise that? Right. But I believe that everything was raised. It was argued that the wrong code was used, and therefore that was outcome determinative because it requires... But that's not the same thing as arguing that the regulation was misconstrued to require objective manifestations. Yes, Your Honor, I believe that was argued. It was because it's... Can you show me where? I don't have the opinion in front of me. I'd be happy to if I were you this afternoon. I don't have it with me and I cannot... What I wanted to say while I'm looking for this, Your Honor, is that the fact that the medical examiner characterized this as residuals, knowing that there was no objective evidence of limitation of motion or anything, means that the pain that he noticed was one, a residual, and two, related to that cartilage surgery. There was nothing else that could have been characterized as a residual. Put this together if you can't find it. Your Honor, it's just implicit because it's a symptomatic painful right knee. There's never been any other argument other than the pain that you've described. So if that was not... If 5259 applied, it had to include the symptomatic right knee. It had to include that interpretation. Thank you. Governing regulations mandated the consideration of painless... Where are you reading from? I'm sorry. This is page 20 of that. It's at 20, appendix 33, 1970, and the schedule for rating disabilities expressed... This is right at the bottom. This is at 20, appendix 33. And it discusses... It's disagreement with the board that said that the appellant was not entitled to a 10% evaluation under 5259 because it was not symptomatic other than... Aside from the veteran's report that his right knee bothered him occasionally. So it is argued in there, Your Honor. In connection with 38 CFR 3.105 and 4.40, which talks about functional loss due to pain. So it was brought up, Your Honor. Let's see my time is up. Again, the medical examiner could not have found any residuals other than the pain related to this because, as we all know, there were no other objective symptoms. Thank you. Thank you.